**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

EARNEST ROBINSON,            :

    Plaintiff,            :

vs.                                            :            CA 06-0421-KD-C

MICHAEL J. ASTRUE,        :
Commissioner of Social Security,
                                                           :
    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. This action is before the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, and the Commissioner's proposed report and recommendation,[1] it is determined that the decision to deny benefits should be affirmed.

---

[1] By order dated June 22, 2007, the undersigned *sua sponte* cancelled the oral argument in this case previously set for June 27, 2007 in Selma, Alabama. (Doc. 18)

The Administrative Law Judge (ALJ) made the following relevant findings:

3. The claimant has "severe" impairments, including arthritis, borderline intellectual functioning, and a psychotic disorder. He has nonsevere impairments of hypertension and noninsulin dependent diabetes mellitus. He has no medically determinable impairment of depression.

4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant's allegations of pain and functional limitations are not credible.

6. The claimant retains the residual functional capacity to perform work within the limitations set forth in Dr. Nayeem's functional assessment. He would have no more than moderate limitations in his ability to perform the mental demands of basic work activities (i.e., the ability to understand, remember and carry out simple instructions) as shown by the global assessment of functioning (GAF) scores appearing in the treatment notes of Cahaba Center for Mental Health. In other words, the claimant can perform a range of light, unskilled work.

7. The claimant cannot perform any past relevant work.

8. The claimant was a younger individual on his alleged onset date and is now [] a person approaching advanced age.

9. The claimant has a limited education.

10. The claimant has not acquired skills that will transfer to other jobs within the residual functional capacity set out above.

11. The framework of Rules 202.18 and 202.11 of the

> Medical-Vocational Guidelines and [the] vocational expert's testimony demonstrate that the claimant has the residual functional capacity to perform jobs that exist in significant numbers in the national economy: Car Wash Attendant (unskilled, light) with 3,400 jobs regionally and 225,000 nationally; Flagger (unskilled, light) with 700 jobs regionally and 60,554 jobs nationally; Laundry Worker (unskilled, light) with 33,000 jobs regionally and 1,500,000 jobs nationally; and Poultry Eviscerater (unskilled, light) with 13,180 jobs regionally and 150,000 jobs nationally.
>
> 12.  The claimant is not disabled within the meaning of the Social Security Act.

(Tr. 21-22)  The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id*. at 1005.  Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work

history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, he can perform those light jobs identified by the vocational expert, is supported by substantial evidence.  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The sole assignment of error raised by the plaintiff is that the ALJ's decision is not supported by substantial evidence because the hypothetical posed to the vocational expert ("VE"), upon which the ALJ relied to deny benefits, was incomplete. (Doc. 10) More specifically, plaintiff contends that the hypothetical posed to the VE contains only physical limitations, not any

mental restrictions, and consequently was incomplete. (*See id*.) It is clear in this circuit that if a hypothetical question posed to a VE does not comprehensively describe all of the claimant's impairments and limitations, the expert's testimony in response to that question does not constitute substantial evidence that other jobs exist in significant numbers in the national economy that the claimant can perform. *See Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) ("'[U]nless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.'").

The ALJ relied upon the following testimony of the vocational expert, in response to a hypothetical question, to establish his fifth-step burden of proving that plaintiff is capable of performing other work which exists in significant numbers in the national economy:

> Q    Assume an individual with the claimant's vocational profile along with limitations and restrictions set forth by Dr. Niene (Phonetic) in Exhibit 4F[;] could such an individual perform the claimant's past relevant work?
>
> A    They could not do the past relevant work, no.
>
> Q    Could they do any other work?

5

> A    In my opinion[,] yes. Dr. Niene (sic) [2] indicates not lifting over thirty pounds and not using a person's lower back to do hard manual labor for six to eight hours a day. I would think that would limit a person to light work but would allow frequent range of light. Therefore, there [would be] light jobs that would be available to a person with this background.
>
> Q    Can you give me an example of what that would be?
>
> A    . . . A person with this background could do light work could be a car wash attendant, person that cleans the car when they come out, unskilled and light work. There's 3,400 of those individuals in the state of Alabama. Two-hundred twenty-five thousand do that nationwide. It could be a flagger with a construction crew where they work on the road and they flag cars around, unskilled and light work. There's 700 of those individuals in the state, 60,554 if you want to go nationwide. They could work in a factory doing several jobs. One could be a laundry folder, unskilled and light work. People that fold towels or laundry as part of a production process. There's 33,000 people that do that in the state and one and a half million people do it nationwide. Work in a poultry plant as a poultry disrater (sic), unskilled and light work[;] 13,180 people [] do that in Alabama, 450,000 do it nationwide.

(Tr. 322-323 (footnote added)) Just prior to posing the foregoing hypothetical to the VE, the ALJ questioned the VE about an individual having a GAF score of sixty. (*See* Tr. 322) The VE testified that such a score "would allow work. That would be at the moderate level of limitations and would certainly still

---

[2]   The physician setting the physical limitations and restrictions relied upon by the ALJ in this hypothetical was Mohammed A. Nayeem. (*Compare* Tr. 322 *with* Tr. 238) Plaintiff makes no argument that the ALJ erroneously relied upon the physical limitations and restrictions identified by Dr. Nayeem. (*See* Doc. 10)

allow work." (*Id.*)

Plaintiff contends that even though the VE offered the foregoing "GAF" testimony, the VE's testimony is nonetheless suspect because there is no evidence that the jobs identified by the VE would accommodate the moderate restrictions in function reflected by the medical evidence. The undersigned disagrees. The VE's testimony is clear that moderate limitations in function would still allow work. (Tr. 322) Combining this testimony with the fact that all jobs identified by the VE fall within the light, unskilled category carries the Commissioner's fifth-step burden given that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting[,]" SSR 85-15, and that moderate restrictions of function would not compromise Robinson's ability to perform the mental requirements of those unskilled light jobs identified by the VE, *cf. Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 527 (1st Cir. 1989) ("Drs. Quinones and Iglesia, in findings that correspond in part to those of Dr. Keene, each reported that claimant was 'moderately limited' in his ability: (1) to maintain attention and concentration for extended periods; (2)

to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) to complete a normal workday without unreasonable interruptions. The claimant's diminished ability to maintain attention and concentraton also was reported by (among others) Dr. Miguez, the Secretary's consulting psychiatrist, and was mentioned by the ALJ, who otherwise did not address these manifestations of claimant's dysthymia. In light of these 'moderate' restrictions, we think that claimant's potential occupational base was eroded at least marginally, and possibly more so. At the same time, we agree with the ALJ's conclusion that, apart from his being relegated to jobs of an unskilled nature, 'the claimant's capacity for the full range of light work was not *significantly* compromised by his additional nonexertional limitations.'"); *Crumb v. Barnhart*, 2007 WL 1223916, *8 (D. Kan. 2007) ("[A] moderate limitation in the ability to carry out detailed instructions would not have a significant impact on the ability to perform unskilled work.").[3]

---

[3] The mental residual functional capacity assessment completed by Dr. Donald Blanton on October 28, 2004, reflects only a mild restriction in understanding, carrying out, and remembering simple instructions; a mild restriction in responding appropriately to supervision and co-workers; and a mild restriction in dealing with changes in the routine work setting. (Tr. 255) These mild restrictions/limitations would not significantly impact Robinson's ability to performed the unskilled light jobs identified by the VE, *Crumb, supra*, at *7 & 8; therefore, the ALJ's reliance upon the VE's testimony to carry the Commissioner's fifth-step burden is supported by substantial evidence.

Plaintiff raises no other assignments of error and because the vocational expert identified several light jobs which exist in significant numbers that plaintiff is capable of performing in light of his impairments and limitations, the ALJ's fifth-step denial of benefits is due to be affirmed.

## CONCLUSION

The Magistrate Judge recommends that the Commissioner's decision denying plaintiff benefits be affirmed.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 29th day of June, 2007.

     s/WILLIAM E. CASSADY
     **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                            _s/WILLIAM E. CASSADY_____
                                                            UNITED STATES MAGISTRATE JUDGE